## PAUL HAALAND AND ANOTHER, COPARTNERS, AND OTHERS v. JAMES POMUSH AND OTHERS.

117 N. W. (2d) 194.

September 14, 1962—No. 38,339.

*Walter F. Mondale,* Attorney General, *O. T. Bundlie, Jr.,* Special Assistant Attorney General, and *Henry H. Feikema,* Assistant Attorney General, for appellants.

*Guesmer, Carson, MacGregor, Clifford & Pratt,* for respondents.

*Sigal, Savelkoul & Cohen,* for Minnesota AFL-CIO Federation of Labor, amicus curiae.

OTIS, JUSTICE.

Appeal from an order of the District Court of Hubbard County, dated October 31, 1960, holding invalid and vacating Order No. 25 of the Industrial Commission entered June 8, 1959, determining minimum wages for women and minors in the public housekeeping industry. The relators are respectively operators of a resort, hotel, and restaurant located in Hubbard County. Pursuant to the statute[1] the commission initiated these proceedings by the appointment of an advisory board consisting of three representatives of employers, three representatives of employees, and three representatives of the public. The commission is vested with authority to investigate the wages paid women and minors in any business, industry, or trade carried on in this state[2] for the purpose of determining what minimum wages are sufficient to maintain them in health and supply them with the comforts and conditions which are reasonably necessary in life.[3] The statute authorizes a differential in wage scales in separate parts of the state when differences in the cost of living warrant a disparity in treatment.[4] The advisory board is required to make recommendations, which are not binding upon the commission,[5] but are estimates of the rates which are sufficient to provide a living wage for women and minors of ordinary ability as well as for learners and apprentices.[6] Public hearings must be held where all interested persons may appear and testify,[7] following which the commission may enter its order.

---

[1] Minn. St. 177.08.
[2] §§ 177.03 and 177.02, subd. 9.
[3] § 177.02, subd. 2.
[4] § 177.07.
[5] § 177.08.
[6] § 177.09.
[7] § 177.05.

In compliance with the statute the commission on November 24, 1958, appointed an advisory board which held five extended hearings. Early in 1959, the board reported to the commission. It found that the cost of living had risen 6.96 percent since the previous investigation in 1956, and proceeded to recommend an increase in minimum wages, with an adjustment of 10 cents an hour for tips received by service employees, and 40 cents per meal and 40 cents per night's lodging when furnished by the employer. The employer representatives filed a dissenting report, taking issue with the population classifications, the minimum hourly rates, the classification of learners, the credit for tips, and other findings and recommendations of the majority.

In March 1959 the Industrial Commission conducted public hearings and issued an order dated June 8, 1959, which is the subject of this litigation and may be found in the appendix to this opinion. As a result of the hearings the Industrial Commission modified the advisory board's recommendations. It established a separate category for cities of the first class, reduced the minimum hourly wage 5 cents for women and minors, and made other adjustments of 5 cents, up and down, with respect to learners and resort employees.[8] Other minor adjustments were made affecting credit for meals.

Although relators did not appear or participate in either the public

---

[8] *Comparison of Minimum Hourly Wage Scales*

| | Advisory Board | Industrial Commission |
|---|---|---|
| *Except Resorts* | | |
| *Women and Minors* | | |
| Cities over 50,000 | $1.05 | $1.00 |
| 25,000 to 50,000 | 1.05 | .90 |
| 2,500 to 25,000 | .95 | .90 |
| Under 2,500 | .90 | .85 |
| *Learners* | | |
| Cities over 50,000 | .90 | .95 |
| 25,000 to 50,000 | .90 | .85 |
| 2,500 to 25,000 | .80 | .85 |
| Under 2,500 | .75 | .80 |
| *Resorts* | | |
| Women and Minors | .85 | .80 |
| Learners | .70 | .75 |

hearings of the advisory committee or of the Industrial Commission, they instituted proceedings in the District Court of Hubbard County to review by certiorari Industrial Commission Order No. 25.[9] The matter was submitted to the district court without a jury October 13, 1959, and on October 31, 1960, the court entered its findings, holding invalid and vacating Industrial Commission Order No. 25.

One finding recites that the rules and regulations of the advisory board promulgated pursuant to Minn. St. 177.08 are valid and sufficient, while a different finding holds they are deficient in failing to permit counsel to be present and participate in the advisory board meetings. One finding holds that all three public members were disinterested and not prejudiced nor made incompetent by reason of prior service, while a different finding holds that relators were denied due process in not being permitted to show that two of the three public members were biased.

The trial court further held:

(a) That the definition of public housekeeping industry covers so many occupations, and the classifications are so broad, that the order is invalid;

(b) That the classification with respect to cities discriminates against relators and deprives them of equal protection of the law;

(c) That relators were denied due process of law by not being permitted to cross-examine witnesses;

(d) That the order discriminates against relators in favor of persons operating food service in retail stores and drugstores having a lower minimum wage rate;

(e) That the credit of 10 cents an hour for tips to service employees is insufficient, and a requirement that employees sign statements acknowledging the receipt of tips is arbitrary and oppressive;

(f) That the commission denied relators due process of law by refusing to consider the worth of services rendered; and the differential of only 5 cents with respect to learners is inadequate;

(g) That there was no reasonable relationship between a living

---

[9] § 177.122.

wage and the requirement that an employer launder uniforms for women and minors;

(h) That the allowance for meals discriminates against those who do not serve meals to the public.

### 1. *Scope of review.*

In reviewing by certiorari an order adopted by the Industrial Commission pursuant to c. 177, governing minimum wages for women and minors, it is not the prerogative of the court to conduct a trial de novo. In this state the office of the writ is merely to ascertain whether the evidence furnishes any legal and substantial basis for the decision of the inferior tribunal.[10] An administrative decision will not be disturbed unless the commission has exceeded its jurisdiction, proceeded on an erroneous theory of law, or has acted arbitrarily, oppressively, and unreasonably, exercising its will and not its judgment.[11] Tested by these standards, we find the decision of the Industrial Commission to be amply supported by the evidence and a reasonable exercise of its judgment, and hold Order No. 25 to be valid. In so deciding we have in mind the broad remedial purposes of the statute and the long history of litigation which has accompanied efforts to implement it.[12] The statute was adopted in recognition of the fact that women and minors are more susceptible to exploitation than are adult males, and that a greater number of men than women have the benefit of collective bargaining procedures. In sustaining the original minimum wage law in Minnesota our court noted that its purpose was to promote the health, peace, morals, education, and good order of the people, and we held there was a sound basis for finding the law was of great and immediate necessity in furthering the public welfare.[13] In determining the validity of the commission's decision we cannot wholly divorce

---

[10]State v. Common Council, 53 Minn. 238, 242, 55 N. W. 118, 119.

[11]State ex rel. Dybdal v. State Securities Comm. 145 Minn. 221, 225, 176 N. W. 759, 761; G. O. Miller Tel. Co. v. Minimum Wage Comm. 145 Minn. 262, 273, 177 N. W. 341, 345.

[12]Williams v. Evans, 139 Minn. 32, 40, 165 N. W. 495, 496, 166 N. W. 504, L. R. A. 1918F, 542.

[13]Williams v. Evans. *supra.*

from our thinking the announced objectives of the legislation pursuant to which the order was adopted.

2. *Definition of public housekeeping.*

The commission defined "Public Housekeeping Industry" as any business providing meals, housing, or maintenance services, and included, among other things, hotels, restaurants, and resorts. However, it is significant that the commission recognized a differential in the cost of living and in the worth of services based on population, on the employee's capacity as a learner or apprentice, and on the peculiar status of resorts. Adjustments for all of these factors have been effected in arriving at the minimum wage schedule. We feel that there is "a common thread" running through all of the businesses affected which affords a reasonable basis for including them in a single order. The evidence is sufficient to sustain a determination that employees in these occupations demonstrate in a general way the same qualifications, perform the same services, and deserve the same compensation. We therefore find the definition proper.

3. *Conduct of the hearings.*

Much is made of the fact that counsel for relators was not permitted to be present and to represent the employer members at the advisory board's meetings, nor was he permitted to cross-examine all of the witnesses at the commission's hearings. In this regard it is well to bear in mind that the advisory board is merely an investigative body whose recommendations are not binding. While this court has acknowledged the importance of the advisory board's function,[14] we are not prepared to hold that its deliberations must be conducted with the formality of a decision-making administrative tribunal.[15] Relators cite Gottshall v. Batt, 35 CCH, Labor Cases, par. 71,762. To the extent the Gottshall case requires the advisory board to afford interested persons the right of counsel at all their hearings we do not choose to follow it, preferring to adhere to the rule we announced in Martin v. Wolfson, 218 Minn. 557, 566, 16 N. W. (2d) 884, 889:

"* * * The advisory board held no public hearings of any kind,

---

[14]Thomas v. Ramberg, 245 Minn. 474, 480, 73 N. W. (2d) 195, 199.
[15]See, Woolley v. United States (9 Cir.) 97 F. (2d) 258, 262.

nor did the statute contemplate that it should. As we have already pointed out, its functions were limited to investigations and recommendations. Its purpose was to enlighten the commission and protect the public, and private interests as well, against uninformed and unwise action."

To the same effect is Bowles v. Baer (7 Cir.) 142 F. (2d) 787. The facts in the instant case are unlike those in Western Union Tel. Co. v. Industrial Comm. (D. Minn.) 24 F. Supp. 370, where the basis for the advisory board's recommendations was not disclosed, no witnesses were sworn or examined by the commission, and the opportunity to be heard was unduly circumscribed. By the same token we are not governed by the rule applied in McGrew v. Industrial Comm. 96 Utah 203, 85 P. (2d) 608. The administrative hearing there involved was held insufficient because no witnesses were sworn, no record made, and no findings entered by the commission. The Utah court held that the procedure did not constitute a public hearing as provided by law.

The trial court held that counsel for relators could not constitutionally waive his right to cross-examine witnesses at the commission's hearing. The facts here are to be distinguished from those in the Gottshall case, where cross-examination was denied over the timely objection of counsel, and the Pennsylvania court held this to be fatal error. The record in the instant case is undisputed that counsel fully acquiesced in the commission's decision to eliminate cross-examination of those who volunteered statements at its hearing.[16] It is clear

---

[16]"Mr. Bundlie: Ladies and gentlemen, we have a large group here, and as I understand the procedure contemplated, is to first, this morning, hear statements from anyone who wishes to speak and I understand that Mr. Pratt's group will not be speaking this morning, but will be speaking this afternoon. These statements, as stated by Mr. Pomush, the Commissioner, will be taken under oath, but you are free to say whatever you want to say. The Commissioners will examine and cross examine, if they feel it is necessary to do so. That is agreeable with me, if it is agreeable with you, Mr. Pratt.

"Mr. Pratt: Do you have the opportunity to question any witnesses?

"Mr. Bundlie: Nobody who makes a public statement. I will question Miss

that the restriction was not intended to apply to witnesses who were formally called by the commission or by other parties.

That a party may waive his right to cross-examination was settled in Martin v. Wolfson, 218 Minn. 557, 569, 16 N. W. (2d) 884, 890. That also was a minimum wage hearing, and we said:

"Except as limited by public policy, a person may waive any legal right, constitutional or statutory. * * * clearly the right to have witnesses sworn and subjected to examination in an administrative hearing conducted without traditional court ritual must be considered as waived where interested parties participate therein without questioning the procedure."

Under the circumstances we find no denial of due process of law either in barring counsel from meetings of the advisory board or in the stipulation to limit cross-examination at the public hearing of the commission.

4.   *Status of public members.*

While the court's findings with respect to the status of two public members of the advisory board are somewhat contradictory, relators argue that our decision in Thomas v. Ramberg, 245 Minn. 474, 73 N. W. (2d) 195, compels a finding that they were denied a fair hearing. In the Thomas case one of the public representatives assumed her official responsibilities with demonstrably fixed predilections in favor of increasing minimum wages. We held that this infected the

---

Cedarleaf; and anybody I start out asking questions you would have the opportunity to cross examine. Neither of us has the opportunity to cross examine those who make statements.

"Mr. Pratt: That is perfectly satisfactory.

"Mr. Bundlie: May the record show that Mr. Pratt is counsel here for—

"Mr. Pratt: Minnesota Hotel Association, Minnesota Restaurant Association, and Minnesota Resort Association.

"Mr. Bundlie: Are there any other attorneys present?

"(No answer.)

"Mr. Bundlie: If there are any other attorneys present representing any group, would you please identify yourself for the record?

"(No answer.)"

whole proceedings and rendered them invalid. We stated (245 Minn. 484, 73 N. W. [2d] 201):

"* * * the ultimate question must be whether the person is so free from bias, prejudice, or a preconceived notion of what should be done that he or she can listen to evidence and make such investigation of the facts as the law requires and then base her decision on such evidence."

The mere fact that in the instant case two of the public members had had some prior experience in minimum wage proceedings is not sufficient as a matter of law to disqualify them when measured by the test we applied in the Thomas case. While it would have been desirable to have kept the record free from any suggestion of bias by permitting a more complete examination of the public members, there is nothing to show that counsel was prevented from producing other evidence bearing on that issue. Under the circumstances we hold that no substantial prejudice has been shown.

5. *Rules adopted by the advisory board.*

The court's findings with respect to the sufficiency of the rules and regulations of the advisory board are also contradictory. To the extent the rules do not allow counsel to be present and participate in all of their meetings, we have already noted they do not affect the validity of the proceedings. Otherwise it is conceded that rules were in fact adopted and that they determined the number of representatives to be appointed from each group, the number to be nominated, the designation of a chairman and secretary, the number constituting a quorum, the manner of voting, the establishing of a record, and the time within which to complete its investigation. While relators complain about the inadequacy of the rules,[17] they fail to specify in what respect they are deficient.

6. *Discrimination in favor of other businesses.*

It is the contention of relators that they are denied equal protection of the laws and subjected to discrimination because employees in cities having a population from 2,500 to 50,000 are treated alike,

---

[17]See, Thomas v. Ramberg, 245 Minn. 474, 476, 73 N. W. (2d) 195, 197.

and because food service employees in retail stores and drugstores are governed by minimum wage orders which are 5 to 15 cents an hour lower, thereby creating an unfair competitive situation. We find no merit in either contention. There are inevitable variations in the cost of living and in the cost of doing business in towns of different sizes in separate sectors of the state. The commission can hardly be expected to establish hourly wage rates which will balance with scientific exactness all of the variable factors which determine living conditions in every area in Minnesota. The order has taken into account the gross discrepancies between large and small communities, and we are satisfied that it achieves a reasonable, just, and equitable result.

With respect to the competition of food services provided in drugstores and retail stores governed by a lower hourly minimum wage order, we are of the opinion that the commission in its discretion was justified in leaving such employees under the same order which governs the workers whose duties are connected with the principal purpose of such businesses. Lunch counters in establishments of this kind are only incidental to their main business, and it is not unreasonable or arbitrary to fix minimum wages for such employees by reference to the situation of the majority who are not engaged in performing housekeeping services. We find there has been no showing of competitive discrimination of a kind which denies relators equal protection of the law. In Burch v. Foy, 62 N. Mex. 219, 308 P. (2d) 199, cited by relators, there was a differential of 25 cents per hour between the class of employees covered by the minimum wage order and service employees working in drugstores. The court there held the classification to be arbitrary and oppressive, two of the five judges dissenting. The differential in the Burch case was substantially greater than in the instant case. We do not feel bound by that decision.

7. *Other objections.*

Finally, the relators object to the order on the grounds that it does not take into consideration the worth of employees; it discriminates against employers who require uniforms and those who do not serve food to the public; it does not include a sufficient allowance for tips and imposes an oppressive burden in requiring written statements con-

cerning tips; and it fails to provide an adequate differential between trained and untrained employees. We have considered all of these objections and find they do not constitute a valid ground for vacating the commission's order. The scale as drafted does in fact provide for a reduction in compensation for learners and apprentices. It is not intended under the law that minimum wages reflect the precise value of each employee's services. Provision is made for special situations where handicapped persons may be employed at a lower figure.[18] The basic purpose of the act is to provide a decent standard of living for persons of ordinary capacity. In Mary Lincoln Candies, Inc. v. Department of Labor, 289 N. Y. 262, 267, 45 N. E. (2d) 434, 436, 143 A. L. R. 1078, the court said:

"* * * when it (the New York Legislature) directed the Wage Board and the Commissioner to take into account the cost of adequate maintenance and health as well as the value of the services and the wages paid in the State for like work, the Legislature of course realized that a wage sufficient to provide a decent standard of living would sometimes exceed the strict bargain-and-sale value of the worker's services."

Recognizing the practical difficulties of promulgating a minimum wage order which will achieve complete equality of treatment for all who are affected, we hold that Order No. 25 is not so discriminatory as to deny relators due process of law or equal protection of the laws, and the order of the district court is therefore reversed.

Reversed.

---

[18] § 177.12.

APPENDIX

"Industrial Commission Order No. 25 Determining Minnesota Minimum Wage for Women and Minor Workers in the Public Housekeeping Industry.

"Whereas, Wage Orders Nos. 13 and 16 promulgated by the Industrial Commission fail to meet present needs, and the Commission having appointed an Advisory Board which on January 19, 1959 filed its report; and the Commission pursuant to notice having held public hearings on March 23, 24, 25 and 30, 1959; and

"After consideration of the reports of the majority and minority of the Advisory Board and all of the evidence offered and the arguments for and against revision of such order, the Commission finds:

"1.   Definitions

"(a)   'Public Housekeeping Industry' means any industry, business, or establishment, either of a profit or a non-profit making character, which provides meals, housing, or maintenance services whether operated as a primary business or when incidental to other operations in an establishment not covered by an industry order of the Commission, and includes, but is not limited to, the following:

"1.   Restaurants, night clubs, taverns, bars, cocktail lounges, lunch counters, cafeterias, boarding houses, clubs, and all similar establishments where food in either solid or liquid form is prepared and served to be consumed on the premises;

"2.   Catering, banquet, box lunch service, drive-ins, and similar establishments which prepare food for consumption on or off the premises;

"3.   Hotels, motels, apartment houses, rooming houses, resorts, camps, clubs, trailer parks, office or loft buildings, and similar establishments offering rental of living, business, or commercial quarters;

"4.   Hospitals, sanitariums, rest homes, child nurseries, child care institutions, homes for the aged, and similar establishments offering board or lodging in addition to medical, surgical, nursing, convalescent, aged, or child care;

"5.   Schools, colleges, or universities, and similar establishments which provide board or lodging in addition to educational facilities;

"6.   Establishments contracting for maintenance or cleaning of commercial quarters or living quarters; and

"7.   Establishments providing veterinary or other animal care services.

"(b)   Resort means any establishment adjacent to any body of water providing, offering or selling to the public sleeping accommodations with or without meals, seasonally for periods of one day or longer.

"(c)   Learner is any woman or minor who has had less than 300 hours of experience in the occupation for which he or she is being hired. Ap-

prentice is any woman or minor who has had less than 300 hours of experience in the occupation for which he or she is being hired.

"(d)  Minor is a person of either sex under 21 years of age.

"(e)  Service employees are any of the following women or minors:

"1.  those whose primary duty is the serving of food and/or beverage to patrons and who customarily receive gratuities directly from such patrons which are equal to or greater than 10¢ an hour; or

"2.  those whose duties are that of a bellhop and who customarily receive gratuities directly from the patrons they serve which are equal to or greater than 10¢ an hour.

"Service employee does not include persons whose primary duties are the preparation or cooking of food or beverage, washing dishes, maintaining or cleaning premises.

"2.  That minimum hourly wages sufficient for living wages for women and minors employed in the public housekeeping industry, except in resorts, shall be:

"In cities, towns and villages of more than 50,000 population and cities, towns and villages adjacent or contiguous thereto $1.00 an hour

"In cities, towns and villages of 2,500 to 50,000 population $.90 an hour

"In cities, towns and villages and all other areas of less than 2,500 population $.85 an hour

"3.  That minimum hourly wages sufficient for living wages for women who are learners or apprentices and minors who are learners or apprentices, except in resorts, shall be:

"In cities, towns and villages of more than 50,000 population and cities, towns and villages adjacent or contiguous thereto $.95 an hour

"In cities, towns and villages of 2,500 to 50,000 population $.85 an hour

"In cities, towns and villages and all other areas of less than 2,500 population $.80 an hour

"4.  That the minimum hourly wages sufficient for living wages for women and for minors employed in resorts shall be $.80 an hour; for women who are learners or apprentices and for minors who are learners or apprentices $.75 an hour.

"5.  That gratuities received by a 'service employee' may be allowed as part of the minimum wage but in an amount not to exceed $.10 an hour. The $.10 deduction from the minimum wage for gratuities received cannot be made unless signed statements from the affected employees state that such worker did receive during the pay period gratuities as herein required. Such statements must be maintained as part of the records of the employer.

"6.  That when an employee works for the same employer in a position where gratuities may be deducted and in a position where gratuities may

not be deducted, the minimum wage rates will be changed by the hour depending on the type of work.

"7.   That no deductions from the minimum wage of an employee shall be made by an employer for any breakage or loss of equipment, unless it can be shown that the breakage or loss is caused by a dishonest or willful act.

"8.   That no employee shall be required to contribute directly or indirectly from the minimum wage for the purchase or maintenance of uniforms. The term 'uniform' means wearing apparel and accessories of distinctive design or color required by the employer to be worn by the employee as a condition of employment.

"9.   That an employer may deduct from the minimum wage $.35 for breakfast, $.45 for lunch, and $.55 for dinner, and $.40 per night's lodging when the same are furnished to employees.

"Meals mean adequate portions of a variety of wholesome, nutritious foods and shall include at least one of the type of foods from all four of the following groups: 1) fruits or vegetables; 2) cereals, bread, or potatoes; 3) eggs, meat or fish; 4) milk, tea or coffee except that for breakfast, group (3) may be omitted if both cereal and bread are offered in group (2). Deductions may be made for bona fide meals consistent with the employee's work shift.

"Lodging means living accommodations which are adequate, decent and sanitary according to usual and customary standards. A deduction will not be permitted unless the room is actually used by the employee and unless the employee desires the room.

"10.   That any woman, or minor earner, apprentice or handicapped person may not be employed at less than the minimum wage except pursuant to M. S. 1957, Section 177.121, and amendments thereto.

"11.   That this Order shall apply to all women and minors employed in the public housekeeping industry, regardless of their duties, whether paid on a time, piece rate, commission or other basis.

"12.   If the application of any provision of this Order, or any section, subsection, subdivision, sentence, clause, phrase, word or portion of this Order shall be held invalid or unconstitutional, the remaining provisions thereof shall not be affected thereby, but shall continue to be given full force and effect as if the part so held invalid or unconstitutional had not been included herein.

"Now, therefore, pursuant to Chapter 177, Minnesota Statutes 1957, it is ordered that the hourly wages specified herein shall be the minimum wages for women and minors and learners and apprentices employed in the Public Housekeeping Industry.

"This order shall become effective 30 days after the date hereof.
"Dated at St. Paul, Minnesota, this 8th day of June, 1959.

> "Industrial Commission of Minnesota,
> "By ROBERT E. FARICY,
> WM. T. HOLZINGER,
> JAMES POMUSH,
> Commissioners."