In the Matter of the Petition for the Establishment of the Sauk River Watershed District filed on January 21, 1986 (Minn.Stat. Sections 112.37 and 112.38).

**BIG FISH LAKE SPORTSMEN'S CLUB, INC., et al., Relators,**

v.

**STATE of Minnesota, WATER RESOURCES BOARD, Respondent.**

No. C6–86–1389.

Court of Appeals of Minnesota.

Feb. 10, 1987.

Ferdinand F. Peters, St. Cloud, for relators.

Hubert H. Humphrey, III, Atty. Gen., Dwight S. Wagenius, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by POPOVICH, C.J., NIERENGARTEN and CRIPPEN, JJ., with oral argument waived.

## OPINION

NIERENGARTEN, Judge.

This is an appeal from an order of the Minnesota Water Resources Board establishing the boundaries of the Sauk River Watershed District. Relators, Big Fish Lake Sportsmen's Club and Matthew Peters, oppose the Board's decision to include Big Fish Lake in the watershed district. They contend the Board's decision is unsupported by substantial evidence and is arbitrary and capricious.

## FACTS

Minnesota Water Resources Board (Board) established the Sauk River Watershed District in central Minnesota covering approximately 1,036 square miles and including land in Stearns, Todd, Douglas, Pope and Meeker counties.

Relators Big Fish Lake Sportsmen's Club, Inc., an organization of landowners on Big Fish Lake and from the surrounding area who work to solve water-related problems and preserve fish and wildlife on Big Fish Lake, and Matthew Peters, who owns land and resides on Big Fish Lake, oppose inclusion of the Big Fish Lake subwatershed in the district. They argue that water from Big Fish Lake does not contribute to the pollution and other problems in the Sauk River watershed and contend they can maintain and improve the lake's water quality themselves.

The Sauk River and the lakes connected to the river channel (Horseshoe Chain of Lakes) have very poor water quality, flooding problems, excessive growth of aquatic vegetation and serious algae problems. A Minnesota Pollution Control Agency lake expert told the Board that lake water quality is not just determined by "shoreline to shoreline" of the lake but all portions of a watershed connect; what impacts one part of the watershed, possibly impacts downstream.

A Department of Natural Resources (DNR) senior hydrologist testified that a watershed district is useful to mediate disputes which cross county borders. He said

that it is important not to create new problems upstream or downstream when resolving a water problem.

The administrative law judge (ALJ) recommended establishing the watershed district and include those subwatersheds that contributed water to the Sauk River basin, excepting the Collegeville Township subwatershed, which includes Big Fish Lake, even though that subwatershed contributes water to the Sauk River Basin.

We produce the specific language of that ALJ finding because it summarizes the relators objection to inclusion in the watershed district:

Big Fish Lake is located in Collegeville Township in the southeast portion of the proposed Watershed District. Big Fish Lake is spring fed and is not a part of the Sauk River chain of lakes. However, some water may enter the Sauk River chain from an outlet on Big Fish Lake. Most of the property owners on Big Fish Lake belong to the Big Fish Lake property Owners Association. This association has worked with the Department of Natural Resources, the U.S. Army Corps of Engineers, and local government to maintain high quality water. The association has funded major water studies prepared by St. Cloud State University and has implemented most of those recommendations. A major project was recently completed to control lake levels. Consequently, Big Fish Lake and adjacent land around Big Fish Lake do not contribute any significant portion of waters which cause occasional flooding problems in the watershed area. Big Fish Lake and the adjacent land around the lake also do not contribute significant nutrients which cause water quality problems in the Sauk River chain of lakes. The Big Fish Lake owners believe that they do not need nor would they benefit from a watershed district. The Big Fish Lake owners in the area have been active in coordinating comprehensive solutions to any water quality problems affecting their lake. They have a good working relationship with existing

governmental agencies and believe that a watershed district would only diminish their ability to deal with water quality problems.

The ALJ concluded:

1. The Collegeville Township subwatershed does not contribute to the problems of the proposed Sauk River Watershed District;

2. it will not benefit from establishment of the proposed Sauk River Watershed District; and

3. exclusion of Big Fish Lake and adjacent land will not affect the watershed district's ability to accomplish its purpose.

The landowners in the proposed watershed district (in excess of 400) who petitioned for the establishment of the district argue that the district is clearly a part of the natural watershed and should be included.

Dr. Keith Knutson, an aquatic biologist, studied Big Fish Lake in 1982 at the request of the Sportsmen's Club. He also conducted a comprehensive independent study of the Sauk River chain of lakes during 1983 and 1984. He testified that:

There is no way a lake association or a lake improvement district or one community can solve the problems that occur in this watershed. It will take cooperation from Lake Osakis, Big Fish Lake groups, some people who don't think they belong, but it is a cooperative effort to clean up the system from Lake Osakis and Sauk Lake down.

The residents living around Big Fish Lake pointed out, by letter, that they have monitored water quality, paid for lake studies and cooperatively paid for installation of a water control device to prevent shoreline erosion. They object to any tax levied upon them to solve problems of the Sauk River.

The Minnesota Water Resources Board adopted the ALJ's findings as its own, including the finding that subwatersheds not contributing to the Sauk River basin should be excluded from the boundaries of the district, but determined that Big Fish Lake and the Collegeville Township subwatershed should be included in the district because "water that outlets from Big Fish Lake flows southwesterly to Eagle Lake, and then southerly to Schneiders Lake and the lower portion of the Horseshoe Lake (sic) Chain of Lakes".

The Board found:

[W]atershed Districts can serve as an effective vehicle for comprehensive local water resources management. Their primary advantage lies in their ability to transcend political boundaries. Counties and municipalities often have limited jurisdiction when resolving water problems. A watershed district can identify, evaluate and implement solutions regardless of political boundaries. In addition, when resolving water problems, it is very important that new problems are not created upstream or downstream * * *.

A watershed district can provide for consistent management of public drainage systems as well as mediate disputes which cross county borders. A watershed district can assess the impact of drainage activities on a total watershed basis. * * *.

The Board further found that despite various water problems studies, there is no coordinated public water management in the area served by the Sauk River Watershed District.

## ISSUES

1. Was the decision of the Water Resources Board to include Big Fish Lake and the rest of the Collegeville Township subwatershed in the Sauk River Watershed District supported by substantial evidence?

2. Was the decision of the Water Resources Board to include Big Fish Lake and the rest of the Collegeville Township subwatershed in the Sauk River Watershed District arbitrary and capricious?

## ANALYSIS

The Minnesota Administrative Procedures Act (APA), Minn.Stat. § 14.69 (1984), governs judicial review of agency decision:

In a judicial review under sections 14.-63 to 14.68, the court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusion, or decisions are:

(a) In violation of constitutional provisions; or

(b) In excess of the statutory authority or jurisdiction of the agency; or

(c) Made upon unlawful procedure; or

(d) Affected by other error of law; or

(e) Unsupported by substantial evidence in view of the entire record as submitted; or

(f) Arbitrary or capricious.

It is well-settled that agency decisions enjoy a presumption of correctness. *Crookston Cattle Co. v. Minnesota Department of Natural Resources,* 300 N.W.2d 769, 777 (Minn.1980).

The agency's factual findings are to be reviewed under the substantial evidence test. *Peoples Natural Gas Co. v. Minnesota Public Utilities Commission,* 342 N.W.2d 348, 351 (Minn.Ct.App.1983), *pet. for rev. denied* (Minn. April 24, 1984). Substantial evidence is:

1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; 2) more than a scintilla of evidence; 3) more than "some evidence"; 4) more than "any evidence"; and 5) evidence considered in its entirety.

*Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 825 (Minn.1977). The reviewing court is to use this test to evaluate the evidence, consider the entire record, and affirm if the agency has engaged in reasoned decision making. *Id.*

## I.

■ Relators argue that the Board's decision to include the Big Fish Lake subwatershed within the boundaries of the proposed watershed district is not supported by substantial evidence. They argue that the ALJ's findings that Big Fish Lake does not contribute to the water quality problems in the Sauk River watershed requires the Board to follow the ALJ's recommendation and exclude it from watershed boundaries.

Minn.Stat. § 112.34 (1984) authorizes the Water Resources Board to establish watershed districts "to carry out conservation of the natural resources of the state through land utilization, flood control * * * for the protection of the public health and welfare and provident use of natural resources, * * *." Minn.Stat. § 112.36, subd. (1) also authorizes the Board to "include the whole or any part of any watershed or watersheds within the discretion of the board * * *."

Minn.Stat. § 112.36(2) (1986) enumerates the purposes required for establishment of a watershed district. These are:

(1) control of alleviation of damage by flood waters;

(2) improvement of stream channels for drainage, navigation, and any other public purpose;

(3) reclaiming of filling wet and overflowed lands;

(4) providing water supply for irrigation;

(5) regulating the flow of streams and conserving the waters thereof;

(6) diverting of changing watercourses in whole or in part;

(7) providing and conserving water supply for domestic, industrial, recreational, agricultural, or other public use;

(8) providing for sanitation and public health and regulating the use of streams, ditches, or watercourses for the purpose of disposing of waste;

(9) repair, improve, relocate, modify, consolidate, and abandon, in whole or in part, drainage systems within a watershed district;

(10) imposition of preventive or remedial measures for the control or alleviation of land and soil erosion and siltation of watercourses or bodies of water affected thereby;

(11) regulating improvements by riparian landowners of the beds, banks, and shores of lakes, streams, and marches by; permit or otherwise in order to preserve the same for beneficial use;

(12) providing for the generation of hydroelectric power;

(13) protecting or enhancing the quality of water in watercourses or bodies of water; and

(14) providing for the protection of groundwater and regulating groundwater use to preserve groundwater for beneficial use.

Any one of the purposes is adequate to support creation of a watershed district. *Markwardt v. State Water Resources Board*, 254 N.W.2d 371, 374 (Minn.1977). The Board found a definite need for a comprehensive plan to improve water quality. Big Fish Lake lies within the natural boundaries of the Sauk River Watershed District and contributes water to the Sauk River basin. The Board's findings identified water-related problems of the proposed watershed district and then specified purposes for creation of the watershed district which include:

(1) controlling and/or minimizing expected flood damage;

(2) controlling or significantly improving the water quality of streams and lakes;

(3) controlling or minimizing water pollution; and

(4) cleaning, repairing and monitoring public ditches, drainage systems, and watercourses.

The Board then determined that since Big Fish Lake faced some of the same water quality problems as the rest of the watershed district, inclusion in the district could assist area property owners in meeting their water quality goals.

The Board concluded:

The water quality goals of property owners on Big Fish Lake are consistent with the purposes of a watershed district. Inclusion of Big Fish Lake in a Sauk River Watershed District could assist Big Fish Lake property owners in accomplishing future water quality investigations, planning regulation and lake improvement and protection projects.

While it is true that Big Fish Lake residents have concerned themselves with erosion and water quality problems over the years, there is no evidence in the record indicating there will not be future water problems properly handled by a watershed district. Nor is there any guarantee or support in the record that measures taken to improve water quality, guard against flooding or erosion, or control pollution on Big Fish Lake will not impact other areas of the watershed in some fashion or other. Intra-county cooperation and a coordinated plan is essential to the success of a watershed district.

The DNR, the PCA and independent experts testified at the administrative hearing and submitted documentary evidence concerning the watershed problems which include excessive growth of aquatic vegetation, complaints and damage from high water levels and flooding, and extreme erosion. These same water problems have occurred in Collegeville Township and Big Fish Lake. Based on the scientific reports and testimony at the hearing, we find that the Board's decision to include Big Fish Lake and Collegeville Township is supported by substantial evidence.

## II.

■ Realtors further argue the Board's rejection of the ALJ's recommendation excluding Collegeville Township from the watershed district is evidence of an arbitrary decision. If the agency's findings are arbitrary and capricious, the court has a separate ground for reversal. Agency findings are arbitrary and capricious when its determination represents its will and not its judgment. *Markwardt*, 254 N.W.2d at 374.

■ Although an agency is not bound by a hearing examiner's findings, the findings should not be taken lightly. *Beaty v. Minnesota Board of Teaching*, 354 N.W.2d 466, 472 (Minn.Ct.App.1984). Failure to explain on the record reasons for deviating

from an ALJ's finding can be evidence of an arbitrary decision. *Id.* At the same time, it is important that agencies reach independent decisions and not "rubber-stamp" a hearing examiner's findings. *City of Moorhead v. Minnesota Public Utilities Commission,* 343 N.W.2d 843, 846 (Minn.1984).

 In describing the function of a hearing examiner, in this case an ALJ, the Supreme Court amplified:

[Hearing examiners'] functions are subordinate to a reviewing agency's * * power. A hearing examiner presides at meetings and makes recommendations for decision. But the agency is not bound by the findings and recommendations of the hearing examiner. * * * In this sense, the relationship differs from that of an appellate court reviewing a lower court's findings of fact: an agency could make new findings and decide contrary to the hearing examiner's recommendation. * * * A hearing examiner takes no power away from an agency.

*City of Moorhead,* 343 N.W.2d at 847 (*quoting Hymanson v. City of St. Paul,* 329 N.W.2d 324, 326–27 (Minn.1983)) (citations omitted). A hearing examiner's report is merely a part of the case record. *City of Moorhead,* 343 N.W.2d at 847. Here, the Board did not totally disregard the hearing examiner's report, but only modified the hearing examiner's findings and conclusions based on the entire record.

Relators also argue that because the Board initially prepared a draft order forming the watershed district and including the Big Fish Lake area within its boundaries five weeks prior to final action, its decision is arbitrary and capricious citing *Honn v. City of Coon Rapids,* 313 N.W.2d 409 (Minn.1981) as authority for the proposition it is unfair to permit an agency to retrospectively rationalize its decision. *Honn* does not apply to this case. The Board's final decision and its findings and conclusions were issued contemporaneously.

Finally, this is a certiorari review. Thus, a court should only reverse when, as a matter of law, the evidence did not provide a substantial basis for the decision. *Honn,* 313 N.W.2d at 414 (citing *Haaland v. Pomush,* 263 Minn. 506, 117 N.W.2d 194 (1962)). The appellate court's function is to make an independent examination of an administrative agency's record and decision and to arrive at its own conclusions. *Reserve Mining Co.,* 256 N.W.2d at 822. Taken together, these principles mean that even if the evidence can lead to differing results, the function of the appellate court is not to resolve such a conflict in the evidence. It must defer to agency determination if supported by substantial evidence. *See Department of Natural Resources v. Todd County Hearings Unit,* 356 N.W.2d 703, 709 (Minn.Ct.App.1984), *pet. for rev. denied,* (Minn. Feb. 6, 1985).

## DECISION

The record supports the decision of the Water Resources Board to include Collegeville Township and Big Fish Lake in the boundaries of the Sauk River Watershed District.

Affirmed.