CITY OF ST. PAUL, Relator,

v.

Catherine M. LaCLAIR, Respondent.

No. CX–90–1741.

Court of Appeals of Minnesota.

Feb. 19, 1991.

Review Granted April 18, 1991.

**6**

Jane A. McPeak, St. Paul City Atty., Philip B. Byrne, Asst. City Atty., St. Paul, for relator.

Richard T. Wylie, Minneapolis, for respondent.

Considered and decided by PARKER, P.J., and HUSPENI and MULALLY,* JJ.

## OPINION

PARKER, Judge.

The City of St. Paul seeks, upon certiorari, a reversal of the decision of the St. Paul Civil Service Commission which rescinded a three-day suspension of a city employee. We affirm.

## FACTS

Officer Catherine LaClair, who was off duty, was working alone in another officer's garage when she heard sirens and squealing tires. Outside, LaClair saw several squad cars and a stopped vehicle. La- Clair observed a suspect flee from the stopped car. She also heard someone yell, "They have guns." Three males had robbed a nearby gas station and the police had stopped a car with three suspects in it.

Two officers each fired one shot toward the fleeing suspect. Neither shot hit the suspect. The suspect escaped despite attempts by LaClair and other officers to follow him. The watch commander at the scene directed LaClair to write a report concerning her involvement.

The St. Paul Police Department Firearms Review Board concluded that the officers lacked probable cause to fire their weapons and reprimanded the two officers who used deadly force against the fleeing suspect. The Firearms Review Board concluded that LaClair falsified a police report in order to help justify the use of force. Subsequently, the St. Paul police chief suspended La- Clair for falsifying a police report. LaClair appealed her suspension to the St. Paul Civil Service Commission under the St. Paul, Minnesota, City Charter, § 12.04.1.

On May 17 and June 4 and 5, 1990, the commission held a hearing at which 13 witnesses testified, each of whom was questioned by the city and LaClair's attorney. The commission questioned 12 of the 13 witnesses. LaClair's attorney and the city attorney both called witnesses, made opening statements and closing arguments, and raised objections.

The commission's majority memorandum explains that after the conclusion of the hearing, one commissioner conducted an investigation of the scene. In particular, he checked the timing of signal lights and measured distances. The three-member panel of the commission rescinded La- Clair's suspension in a 2–1 decision, concluding that the city did not sustain its burden of proof by a fair preponderance of the evidence that the three-day suspension was warranted.

---

* Retired judge of the district court, acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

## ISSUE

Does the City of St. Paul have due process rights in an employee suspension hearing before the St. Paul Civil Service Commission?

## DISCUSSION

■ Certiorari in this state "is not the common law writ, 'but rather a writ in the nature of certiorari.'" *Mahnerd v. Canfield*, 297 Minn. 148, 152, 211 N.W.2d 177, 180 (1973) (quoting *State ex rel. Kruse v. Webster*, 231 Minn. 309, 313, 43 N.W.2d 116, 119 (1950)). When conducting a review by certiorari, this court does not conduct a trial de novo. *Haaland v. Pomush*, 263 Minn. 506, 510, 117 N.W.2d 194, 197 (1962). In *Haaland* the supreme court further explained the standard of review for certiorari appeals:

> In this state the office of the writ is merely to ascertain whether the evidence furnishes any legal and substantial basis for the decision of the inferior tribunal. An administrative decision will not be disturbed unless the commission has exceeded its jurisdiction, proceeded on an erroneous theory of law, or has acted arbitrarily, oppressively, and unreasonably, exercising its will and not its judgment.

*Id.* at 510, 117 N.W.2d 194.

The city argues that the Civil Service Commission erred by failing to make its decision on the record. LaClair responds that the city lacks standing to challenge the denial of due process by the St. Paul Civil Service Commission.

Due process is an individual right; it is a personal right guaranteed to individuals. *Cf. Shelley v. Kraemer*, 334 U.S. 1, 23, 68 S.Ct. 836, 847, 92 L.Ed. 1161 (1948). Procedural due process guarantees notice and opportunity to be heard. *Hough Transit, Ltd. v. Harig*, 373 N.W.2d 327, 333 (Minn. App.1985).

In *City of Minneapolis Commission on Civil Rights v. University of Minnesota*, 356 N.W.2d 841, 843 (Minn.App.1984) (quoting *Welsh v. City of Orono*, 355 N.W.2d 117 (Minn.1984)), the court stated:

> A municipality has no inherent powers, but only such powers as are expressly conferred by statute or are implied as necessary in aid of those powers which are expressly conferred.

Moreover, in *State ex rel. Independent School Dist. No. 276 v. Department of Education*, 256 N.W.2d 619, 624 (Minn. 1977), the Minnesota Supreme Court held:

> As creatures of statute, governmental entities cannot demand formal hearings based upon constitutional due process— they can do so only based upon a statute conferring the right.

■ In *Minnesota State Bd. of Health v. City of Brainerd*, 308 Minn. 24, 41, 241 N.W.2d 624, 633–34 (1976), the court held that a governmental subdivision is not a person entitled to due process protections and thus has no constitutional right to a due process hearing. Accordingly, the City of St. Paul is not entitled to due process protection. It is entitled to a hearing based upon a statute conferring a right. *See Independent School District No. 276*, 256 N.W.2d at 624.

St. Paul City Charter § 12.04.1 provides: After exhausting the formal grievance procedure, the complaining employee may petition the civil service commission for a hearing and the commission shall, within a reasonable time, conduct a hearing at which all parties to the grievance or their representatives may be heard. * * *

■ Since LaClair petitioned the commission for a hearing, the city is entitled to "be heard" at that hearing. In this case the city was heard; it examined and called witnesses, presented opening statements and closing arguments, and made objections at a hearing held by the commission.

The city relies on *In re Amalgamated Food Handlers, Local 653-A*, 244 Minn. 279, 70 N.W.2d 267 (1955), to argue that the commission's failure to make its decision on the record is a violation of due process. In *Amalgamated*, after a hearing on the certification of a bargaining agent, an assistant conciliator conducted further investigation. The labor conciliator made a conclusion "[b]ased partially upon the hear-

ing and partially upon the investigation." *Id.* at 282–83, 70 N.W.2d at 269–70. A rule promulgated under statutory authority required the conciliator to make his determination regarding certification "upon the record made therein." *Id.* at 287, 70 N.W.2d at 272. The Minnesota Supreme Court remanded for further proceedings resulting "in a decision based solely on the record at the hearing or such further hearing as may be essential to comply with statutory requirements." *Id.* at 288, 70 N.W.2d at 272.

In this case, unlike *Amalgamated,* no statute, rule, ordinance or charter specifically requires that the decision be based solely on record evidence.

## DECISION

The process to which the City of St. Paul is entitled at a civil service commission hearing is that granted by the St. Paul City Charter. Since the city was heard at the St. Paul Civil Service Commission hearing, it received all process expressly granted to it. The commission did not exceed its jurisdiction, proceed on an erroneous theory of law, or act arbitrarily, oppressively or unreasonably by investigating the scene after the hearing.

Affirmed.