**CITY OF ST. PAUL, Appellant,**

v.

**Catherine M. LaCLAIR, Respondent.**

No. CX–90–1741.

Supreme Court of Minnesota.

Jan. 17, 1992.

Rehearing Denied March 3, 1992.

Jane A. McPeak, Philip P. Byrne, Asst. City Atty., St. Paul, for appellant.

Richard T. Wylie, Minneapolis, for respondent.

Gregg M. Corwin, Karen Peterson, St. Louis Park, for amicus curiae MN Council of Amer. Fed. of State, County & Mun., Emp.

Carla J. Heyl, St. Paul, for amicus curiae League of MN Cities.

KEITH, Chief Justice.

The City of Saint Paul ("City") seeks further review of a court of appeals decision which affirmed the City of St. Paul Civil Service Commission's ("Commission") rescission of the suspension of police officer Catherine LaClair. The court of ap-

peals held that the City was not entitled to a due process hearing. *City of St. Paul v. LaClair*, 466 N.W.2d 5 (Minn.App.1991). Because we conclude that the City lacks standing to appeal, we dismiss the appeal.

The underlying facts of this case are as follows. At 12:59 a.m. on January 22, 1990, a police call went out that there had been a "stickup" by three men at the Total Petroleum Station at Seventh and Cypress Streets in St. Paul. Several officers in police cars responded; one officer stopped the car in which the alleged robbers were riding; and two officers gave foot chase after one of the men fled the auto. In this chase, the officers fired their guns without hitting the fleeing man. Off-duty Officer LaClair, who happened to be in the immediate area of the felony stop, also responded on foot. Because of her involvement, she was asked to write a report about the incident. In her report, Officer LaClair stated that she had heard someone yell, "they got guns," before she heard the gunshots.

Since police officers fired their weapons, the St. Paul Firearms Review Board ("FRB")[1] reviewed LaClair's report and reports from three other officers involved in the stop. The FRB interviewed the three officers and determined that the two officers who gave chase did not have probable cause to fire their guns. These officers were reprimanded. The FRB further determined that Officer LaClair had falsified her report. The St. Paul Chief of Police, based on the FRB's report, suspended Officer LaClair for three days without pay. Officer LaClair appealed this decision to the St. Paul Civil Service Commission. The Commission held hearings over three days, and heard testimony from numerous witnesses including the driver of the getaway car, from a person who observed part of the felony stop, and from other officers who had responded but who were not interviewed by the FRB. The Commission also listened to a tape of the police dispatch. Both parties were represented by counsel.

A majority of the Commission found that at least one credible witness verified each

1. The Firearms Review Board operates within the St. Paul Police Department. It reviews inci-

dents involving the use of service weapons by members of the department.

of Officer LaClair's statements. It ruled that the City had not sustained its burden of proof by a fair preponderance of the evidence and rescinded the suspension of Officer LaClair. In the Commission's memorandum accompanying the decision, one member of the three-person Commission admitted he had, on his own, after the hearing had been completed, and without notice to either party, timed traffic lights and made measurements at the scene of the arrest. Because of the independent actions of this member of the Commission, the City claims its due process rights were violated.

We do not reach the issue of due process because the threshold question of whether the City has standing to appeal its own civil service commission's decision is dispositive. We conclude that the City does not have standing to appeal.

Standing to appeal is conferred when there is injury to a legally protected right. *Joint Anti–Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 (1951). In *Minnesota State Board of Health v. Governor's Certificate of Need Appeal Board*, 304 Minn. 209, 230 N.W.2d 176 (1975), we held that the State Board of Health did not have standing to appeal the decision of its own Appeal Board. We said that standing was conferred either by statute or by status as an aggrieved party. An aggrieved party is one outside the decisional process who is directly affected thereby. *Id.*, 230 N.W.2d at 181. In quasi-judicial proceedings, we have said that to be aggrieved, a party must not be part of the decisional process. The State Board of Health, being part of the decision making, was not outside of the decisional process, and therefore was not an aggrieved party. *Id.*

Discipline of a municipal employee, like discharge, is an administrative function, albeit performed in a quasi-judicial manner. *See Sellin v. City of Duluth*, 248 Minn. 333, 338, 80 N.W.2d 67, 71 (1956). In disciplining Officer LaClair, the City, through its police chief, acts in a quasi-judicial manner. Here too, the police chief, appointed by the mayor, is part of the decision-making process. The police chief has the right to discipline police department employees who, in turn, have the right, by City Charter, to appeal to the Commission. Likewise, the City, by its grievance procedure before the Commission, acts in a quasi-judicial manner in reaching a final decision on the suspension. The City, being a part of the decisional process, is not an aggrieved party for purposes of standing.

In addition, the Commission was created by the City. The City has the power to modify the Commission and the civil service rules under which the Commission operates. The City Charter states:

The civil service rules shall include provisions establishing a formal procedure for the review of employee grievances not covered under labor agreements.... Following the hearing, the commission shall promptly rule on the grievance petition. Its decision shall have such binding effect as the civil service rules prescribe.

St. Paul City Charter § 12.04.1.

In other words, the City created the Police Department and the Civil Service Commission. It created the Commission to provide a vehicle for review of employee grievances. The City, through the Charter, sets the rules and procedures under which the Commission operates. As long as the Commission operated within its own rules and procedures, drawn up and approved by the City Council, the City is not harmed by the decision of its own Commission. Moreover, no statute confers standing on the City to appeal a decision of its own Civil Service Commission.

We hold, therefore, that the City lacks standing to appeal the decision of its own Civil Service Commission. Consequently, the City's appeal from the decision setting aside Officer LaClair's suspension is dismissed.

We might add that, from our review of the record, there was ample evidence to sustain the Commission's rescission of the officer's suspension. Although we strongly believe it would have been better had one of the commissioners not conducted his own investigation, that investigation made no difference to the Commission's decision.

The Commission considered the evidence presented over the three days of hearings. Without relying on the commissioner's investigation, the Commission was able independently to verify each of Officer LaClair's statements. In addition, the city engineer's affidavit about the timing of the lights is not contrary to the finding of the Commission.

Appeal dismissed.