**In the Matter of Dennis Darol LINEHAN.**

No. C3–96–511.

Supreme Court of Minnesota.

Dec. 12, 1996.

Lisbeth J. Nudell, Minneapolis, Michael F. Cromett, St. Paul, Eric S. Janus, Minneapolis, for appellant.

Susan Gaertner, Ramsey County Attorney, Mark Nathan Lystig, Christian Wilton, As-

sistant County Attorneys, St. Paul, Hubert H. Humphrey, III, Attorney General, John L. Kirwin, Assistant Attorney General, St. Paul, for respondent.

## OPINION

KEITH, Chief Justice.

This case raises questions regarding the scope of the review hearing for final commitments under the Sexually Dangerous Persons Act, Minn.Stat. §§ 253B.02, subd. 18b, 253B.18, subds. 2–3, 253B.185, subd. 1 (1994) (SDP Act), and the sufficiency of the evidence supporting appellant Dennis Darol Linehan's final and indeterminate commitment. Linehan challenges the district court's final order of commitment following a statutorily required 60–day review hearing in which the court determined that Linehan continues to qualify for commitment under the SDP Act. He maintains that the 60–day review hearing should be broadly construed as a "double-check" against erroneous commitment; therefore, Linehan argues the district court erred in refusing to allow him to challenge the initial order of commitment at the review hearing. Linehan also contends that evidence introduced at his review hearing demonstrated that "clinical" predictions in favor of his commitment were "potentially too inaccurate to support a deprivation of liberty."

We granted Linehan's petition for accelerated review so that we could consider this matter in conjunction with Linehan's challenge to his initial commitment in *In re Linehan*, 544 N.W.2d 308 (Minn.1996) (*Linehan II*). We now affirm.[1]

### I.

In January 1996, the Ramsey County District Court held a hearing reviewing Linehan's initial commitment in July 1995 to the Minnesota Security Hospital (MSH) as a sexually dangerous person (SDP). As required by the SDP Act, Dr. Thomas Gratzer, senior forensic psychiatrist at MSH, filed a treatment report with the district court in September 1995.[2] In the report, Dr. Gratzer concluded that Linehan continues to qualify as an SDP and recommended continued inpatient treatment.

After hearing 5 days of testimony at the review hearing, the district court agreed that Linehan continues to meet SDP Act criteria and ordered final commitment under the statute. Testifying in favor of commitment were Dr. Douglas Fox, a licensed psychologist in private practice retained by Ramsey County, and Dr. Gratzer. Both doctors asserted that Linehan manifests antisocial personality disorder (APD), paraphiliac disorders and alcohol dependency. Dr. Gratzer also listed in his treatment report additional diagnoses of pedophilia and, possibly, sexual sadism. Both doctors concluded that Linehan presents a high risk of engaging in future acts of harmful sexual conduct and is highly likely to reoffend.

Linehan's only witness was Dr. Paul Meehl, an expert on the accuracy of clinical versus actuarial predictions. The court allowed Dr. Meehl's testimony over the county's objections that the substance of Dr. Meehl's testimony was previously considered in the initial commitment hearing and irrelevant to the issue of what had occurred since the court's initial order. Although the district court allowed Dr. Meehl's testimony, the court ruled that it would not allow the relitigation of factual issues decided at the initial

---

1. We addressed Linehan's challenge to his initial commitment in *Linehan II*, 544 N.W.2d at 310. Because we upheld the initial commitment order, we decline to address Linehan's arguments regarding the effect of reversal of that order on an order of final commitment following a review hearing.

2. Under the SDP Act, a written treatment report must be submitted to the committing court within 60 days after initial commitment or admission

to the treatment facility. The statute directs, "The court, prior to making a final determination with regard to a person initially committed * * *, shall hold a hearing. * * * * If the court finds at the hearing * * * that the patient continues to be [a sexually dangerous person], then the court shall order commitment of the proposed patient for an indeterminate period of time." Minn.Stat. §§ 253B.18, subds. 2–3, 253B.185, subd. 1.

hearing, unless such issues were "reopened" by the county or state.

Using a hypothetical base rate of recidivism of 18% from a study on reconviction rates for heterosexual child molesters, Dr. Meehl illustrated that if, in fact, the base rate of recidivism is relatively low, then even a clinician who is highly accurate in predicting future misconduct will often be wrong. Even assuming that Linehan may be in a special group of child molesters more likely than average to reoffend, Dr. Meehl illustrated that clinical prediction accuracy may nonetheless be low.

After hearing the testimony, the district court found clear and convincing evidence that Linehan continues to meet the SDP Act requirements. The court did not specify the disorder or dysfunction upon which it relied. Rather, the court apparently incorporated the findings made during the initial commitment proceeding. The court did, however, address Dr. Meehl's testimony and the weight it afforded the testimony. The court made clear that it had not credited Dr. Meehl's testimony on the merits because it was "directed to one point: [t]he difficulty of predicting future recidivist behavior * * *." As such, the court concluded that Dr. Meehl's testimony was in essence an attack on the validity of the SDP Act, which should have been raised no later than the initial commitment hearing.

## II.

We first address Linehan's contention that the district court erroneously limited the scope of the review hearing and the state's response that Linehan lacks standing to raise the issue.

 We conclude, as an initial matter, that Linehan has standing to raise the issue. Standing to appeal is conferred when there is injury to a legally protected right. *City of St. Paul v. LaClair*, 479 N.W.2d 369, 371 (Minn.1992). Moreover, for a party to possess standing, "the right invaded must be immediate, not merely some possible, remote consequence, or mere possibility arising from some unknown and future contingency." *Twin Cities Metro. Pub. Transit Area v.*

*Holter*, 311 Minn. 423, 425–26, 249 N.W.2d 458, 460 (1977) (quoting 4 C.J.S. *Appeal and Error* § 183b(1) at 561). Although the district court admitted Dr. Meehl's testimony at the review hearing, the court did not fully credit Dr. Meehl's testimony, but instead considered it beyond the scope of the review hearing. Accordingly, because Linehan was adversely impacted by the district court's ruling, we find he possesses standing to appeal. *See id.*

Linehan next argues that the review hearing is intended solely to benefit the patient by providing a forum for consideration of additional evidence that might preserve that person's freedom from confinement. Accordingly, he contends that the patient may challenge the commitment by demonstrating "*either* that his commitment was improper *ab initio, or* that his condition has changed so that the commitment has become improper." Linehan relies on the United States Supreme Court's decision in *Addington v. Texas*, 441 U.S. 418, 428–29, 99 S.Ct. 1804, 1810–11, 60 L.Ed.2d 323 (1979) (citing the "layers of professional review" as a safeguard against continued erroneous commitment).

The state counters that the purpose of the review hearing under the statute is two-fold: first, the review hearing allows the district court to consider the views of the treatment facility before issuing a final commitment order; and, second, the review hearing allows the district court to consider whether changes in the patient's condition render further commitment as an SDP inappropriate. *See* Minn.Stat. § 253B.18, subds. 2–3.

The state relies on the language of the statute and commitment act rules for the mentally ill and dangerous which directs first, that a treatment report be filed within 60 days, *id.*; Rule 12.05, Special Rules of Procedure Governing Proceedings Under the Minnesota Commitment Act of 1982; and, second, that the district court ascertain whether the patient "continues to be" mentally ill and dangerous. Minn.Stat. § 253B.18, subd. 3. Consistent with this two-fold purpose, the state concludes Linehan may not challenge every aspect of the initial commitment order, but is limited to offering evidence that is relevant to a change

in his condition or rebuts a new determination of the treatment facility. To allow Linehan to reoffer all evidence opposing commitment, including that heard at the initial hearing, would in the state's estimation be "an enormous waste of time and resources."

■ We agree. However, because of the significant liberty interests at stake, we are hesitant to confer res judicata status on the initial commitment order and believe the district court must retain the discretion to consider other evidence which is new and helpful. We therefore hold that evidence considered at the review hearing is properly limited to: (1) the statutorily required treatment report; (2) evidence of changes in the patient's condition since the initial commitment hearing; and (3) such other evidence as in the district court's discretion enhances its assessment of whether the patient continues to meet statutory criteria for commitment. *See id.* § 253B.18, subds. 2–3.

■ Accordingly, we reject Linehan's argument that the district court improperly limited its consideration of the evidence. First, Linehan does not assert that his condition has changed since his initial commitment. Second, because the substance of Dr. Meehl's attack on the accuracy of clinical predictions did not bear on a change in Linehan's condition, and was previously considered during the initial commitment hearing,[3] his testimony in this proceeding was neither new nor helpful. Consequently, the district court was within its discretion in declining to credit the testimony.

■ Linehan's final contention is that the county failed to meet its burden of proving that Linehan is highly likely to reoffend. He bases his argument on Dr. Meehl's testimony regarding the potential inaccuracy of clinicians' predictions of future behavior. Dr. Meehl's testimony was the only evidence offered by Linehan at the review hearing. Because we conclude that the district court properly declined to credit Dr. Meehl's testimony, we now reject Linehan's argument that there was insufficient evidence of dan-

gerousness to support commitment under the statute. In the absence of contrary evidence, we find the district court properly found sufficient evidence of dangerousness both in the testimony of Drs. Gratzer and Fox, and in Linehan's failure to contest the county's assertion that his condition had not changed since the initial commitment hearing.

Affirmed.

BLATZ, J., took no part in the consideration or decision of the case.

TOMLJANOVICH, Justice (concurring specially).

Because I disagreed with *Linehan II,* I would not have reached the review hearing. I recognize that *Linehan II* is the law, and agree with the majority as to the scope of the review hearing. Therefore I concur with this opinion.

PAGE, Justice (concurring specially).

I join in the special concurrence of Justice Tomljanovich.

---

**3.** Dr. Meehl offered essentially the same theory as was presented by Dr. R. Owen Nelson at the initial hearing, although they illustrated their arguments with different assumed base rates of recidivism. *See Linehan II,* 544 N.W.2d at 324 n. 2.