**In the Matter of the Civil COM-MITMENT OF Steven Leo RANNOW.**

No. A07–2246.

Court of Appeals of Minnesota.

May 20, 2008.

Francis J. Eggert, Winsted, MN, for appellant Rannow.

Michael K. Junge, McLeod County Attorney, Amy Elizabeth Olson, Assistant County Attorney, Glencoe, MN, for respondent State of Minnesota.

Considered and decided by HALBROOKS, Presiding Judge; KLAPHAKE, Judge; and SCHELLHAS, Judge.

## OPINION

HALBROOKS, Judge.

Appellant Steven Leo Rannow challenges the district court's denial of his motion to rescind its order committing appellant to the Minnesota Security Hospital for treatment as mentally ill and dangerous pursuant to Minn.Stat. § 253B.18 (2006). The district court issued its order following appellant's stipulation that he is "mentally ill and dangerous," as defined by Minn.Stat. § 253B.02, subd. 17 (2006). Appellant contends that the district court should not have accepted his stipulation because the record lacks a sufficient factual basis to support a finding of "dangerousness" and that the requirements of a criminal *Alford* plea apply to his civil-commitment stipulation. Because the district court did not abuse its discretion, we affirm.

## FACTS

At the time that McLeod County petitioned to commit appellant as mentally ill and dangerous, appellant was serving a 36-month prison sentence for five felony convictions of violation of a restraining order. Appellant also had pending charges resulting from his multiple attempts to contact the same female victim while appellant was in prison.

The district court conducted a preliminary commitment hearing on February 13, 2006; appellant was represented by counsel. Appellant waived his right to have examiners appointed and agreed to stipulate that he is mentally ill and dangerous in exchange for the county's agreement to drop the pending criminal charges. Ap-

pellant also agreed with the state that mental-health treatment was more appropriate for him than additional criminal convictions. Appellant was questioned about his rights by both his attorney and the district court. After concluding that appellant voluntarily and intelligently agreed to the stipulation, the district court entered an initial commitment order, transferring appellant to the security hospital.

On February 24, 2006, appellant filed a handwritten motion seeking "dismissal" of his commitment. Because the final commitment hearing was still pending, the district court took no action on appellant's motion. The Minnesota Department of Human Services (MDHS) provided a report regarding appellant's commitment on May 18, 2006. According to the report, appellant meets the criteria for commitment to the Minnesota Security Hospital, and MDHS diagnosed appellant with delusional disorder, erotomanic and persecutory type, and antisocial- and borderline-personality traits. MDHS concluded that appellant demonstrated "active symptoms of major mental illness, impulsivity, irresponsibility and a lack of behavior controls." The report also addressed appellant's potential for future violent behavior:

> Even though we can not definitely say whether [appellant] will become violent towards his victim, the warning signs in this particular case are of great concern. He demonstrates little insight, displays poor judgment, has not been cooperative with court orders or supervision, and becomes angry and irritable when discussing the victim. Finally, he has persisted to stalk the victim despite all of the negative consequences he has suffered.

Appellant returned to district court for a review hearing on June 1, 2006, and a final determination regarding his commitment

pursuant to Minn.Stat. § 253B.18, subd. 2 (2006).

Appellant was again represented by counsel. Both of the attorneys and the district court questioned appellant concerning the waiver of his right to a contested final determination and indicated that he would be committed to the security hospital for an indeterminate period of time. Following the hearing, the district court filed its order of commitment. Appellant filed a notice of appeal, asking this court to vacate his stipulation on the ground that the district court erred in its determination that he is mentally ill and dangerous. We dismissed his appeal, concluding that appellant should have moved in district court to withdraw his stipulation before appealing to this court. Appellant subsequently moved the district court to reconsider and rescind its order for commitment. For reasons not established in the record, appellant withdrew this motion and then filed a second motion, seeking the same relief. The district court held a hearing on appellant's motion on June 28, 2007, and subsequently denied appellant's motion. This appeal follows.

## ISSUE

Did the district court abuse its discretion in denying appellant's motion to rescind his commitment as mentally ill and dangerous under Minn.Stat. § 253B.18 (2006)?

## ANALYSIS

Appellant concedes that he is mentally ill but argues that he is not "dangerous" as defined in Minn.Stat. § 253B.02, subd. 17 (2006), because he has never engaged in an overt act causing or attempting to cause serious physical harm to another. He contends that his stipulation to the contrary was not voluntary and intelligent because the record contains an insufficient factual basis to establish a strong probability that he would be committed. While acknowledging his argument has no existing support in the law, appellant urges us to analogize this circumstance to an *Alford* plea in a criminal case. *See North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) (concluding that, largely because of the strong factual basis establishing the defendant's guilt, the defendant voluntarily, intelligently, and rationally pleaded guilty to the charged crime despite maintaining his innocence).

But because commitment proceedings and commitment laws are civil in nature, we reject appellant's argument. *See Kansas v. Hendricks,* 521 U.S. 346, 361–69, 117 S.Ct. 2072, 2081–85, 138 L.Ed.2d 501 (1997) (discussing Kansas's civil-commitment law for sexually violent predators and holding that it does not constitute a criminal proceeding); *Specht v. Patterson,* 386 U.S. 605, 610 n. 3, 87 S.Ct. 1209, 1212 n. 3, 18 L.Ed.2d 326 (1967) (noting that a former version of the Minnesota psychopathic-personality-commitment law is not criminal in nature); *In re Linehan,* 594 N.W.2d 867, 871–72 (Minn.1999) (following the holding of *Hendricks* ). In a civil matter, a stipulation "cannot ordinarily be repudiated or withdrawn from by one party without the consent of the other, except by leave of the court for cause shown." *Gran v. City of St. Paul,* 274 Minn. 220, 223, 143 N.W.2d 246, 249 (1966). The decision to vacate a stipulation "rests largely in the discretion of the [district] court, and its action will not be reversed absent a showing that the court acted so arbitrarily as to constitute an abuse of that discretion." *Anderson v. Anderson,* 303 Minn. 26, 32, 225 N.W.2d 837, 840 (1975). A stipulation may be vacated when it was made improvidently and in good conscience and equity should not stand. *John v. John,* 322 N.W.2d 347, 348 (Minn.1982).

When there is fraud or duress that prejudices the party making the stipulation, the stipulation was improvidently made. *Toughill v. Toughill,* 609 N.W.2d 634, 639 (Minn.App.2000).

■ The record before us demonstrates that the district court acted within its discretion in refusing to vacate the stipulation. At two hearings, appellant engaged in lengthy on-the-record discussions with his attorney regarding his potential stipulation that he is mentally ill and dangerous. Appellant was clearly informed of the consequences of his civil commitment and made his understanding evident in the record. At the preliminary commitment hearing, appellant had the following exchange with his attorney about the consequences of his commitment:

> Q: ... I told you that it's an indefinite commitment if this commitment becomes final. That means that there is no set term to the commitment. It's strictly up to the Commissioner of Human Services to determine when you should be provisionally discharged or discharged. Do you understand that?
>
> A: Yes.
>
> Q: It's not like when you get a term to prison, you get a set term, that's not the way it works when you are committed to a state hospital under a commitment. Do you understand that?
>
> A: Yes.

Appellant expressed his awareness that if he chose not to agree to the stipulation that he could still be subject to criminal charges for his more recent violations of the restraining order. In discussing the stipulation with the district court, appellant made it clear that he desired treatment rather than incarceration.

> Court: Okay. Now, by going through this process, you're agreeing that—you're stipulating with— which means you are agreeing to a mental illness and to being mentally ill and dangerous for purposes of being committed to St. Peter. Do you understand that?
>
> A: Yes.
>
> Court: Okay. And the State has indicated that they have some reservations as to whether they could prove that you're dangerous and that's why they're only willing to agree to this if you are willing to agree to this. Do you understand that?
>
> A: I understand.
>
> Court: Okay. And you're willing to do it because then hopefully instead of spending a lot more years in a prison cell, and/or reoffending, that you get treatment that will allow you to be free of doing this type of conduct. Is that all correct?
>
> A: Yes.
>
> Court: Okay. In so doing this, you will not get a—what they call a speedy trial. If you wanted to go ahead and assert any defense, whether that included a mental illness defense or not, you have the right to have a speedy trial. But by attempting to resolve your matter via a commitment to the Commissioner of Human Services, you have to waive your right to a speedy trial. Do you understand that?
>
> A: I understand.
>
> Court: Okay. And do you then in fact waive your right to a speedy trial?
>
> A: Yes.

At appellant's review hearing, he had another lengthy discussion with his attorney about the stipulation and his desire to enter into the agreement. Appellant and his attorney also specifically addressed the issue of stipulating to being "dangerous" as defined by section 253B.02:

Q: And the hearing is to determine, if there were to be a contested hearing, would be to determine if the judge should commit you as being mentally ill and dangerous, do you understand that?

A: Yes, I understand.

Q: And I think you previously had been committed as being mentally ill to Willmar Regional Treatment Center a few years back; is that correct?

A: That's correct.

Q: And that commitment ended by Willmar basically, for whatever reason, saying it's over, and then you were committed back to the jail cell on criminal charges; is that correct?

A: Yes.

Q: Okay. This commitment is different than that, you know, this is for committing someone as mentally ill. This is to commit someone as being mentally ill and dangerous. And you and I talked about this and specifically the definition of the term dangerous. Is that correct that we talked about that?

A: Yes.

Q: And the question is not so much on the mental illness part of it, because this doctor has submitted a rather lengthy and exhaustive report concerning you having a mental illness, but it's more on the issue of definition of dangerous, do you understand that?

A: I understand.

Q: And I've explained this to you, have I not?

A: Yes.

. . . .

Q: Okay. And I've explained to you as best I can what the differences are here between your agreeing to waive your right to have a hearing versus saying, well, gee, you know, I've decided not to go along with this, correct?

A: Correct.

Q: And I told you that if you were—if you now decided that you didn't want to waive your right to a hearing, the State could either proceed with those criminal charges or still attempt to have you committed and have a contested hearing. I told you that they would have those two options, did I not?

A: Yes.

. . . .

Q: Okay. Have you had enough time to think about this and make this decision here today?

A: Yes.

Q: No one's forced or threatened you to give up your rights and—that you had to do it this way, correct?

A: Correct.

Q: Are you making a free and voluntary decision?

A: Yes, I am.

The district court concluded that appellant

was well aware that if he did not enter into the stipulation [the state] would have to prove that he was dangerous before [appellant] could be committed. Despite this, [appellant] had good reason to enter into the stipulation because it would result in the dismissal of multiple

criminal charges that were pending against him.

Appellant had a sound, rational basis for entering into the stipulation, and the record lacks any evidence of fraud or duress that influenced appellant to do so. Appellant's response in the detailed exchanges that appellant had with both his attorney and the district court support the district court's determination that appellant understood the advantages and disadvantages of the stipulation. Because appellant made the stipulation knowingly and voluntarily, the district court acted within its discretion by not rescinding it.

■ As to his second argument, appellant contends that he cannot waive his right to be determined to be "dangerous" or stipulate to that fact because the record lacks the factual support for a finding that he is "dangerous" as defined by Minn.Stat. § 253B.02 (2006). If appellant had chosen to contest that determination in district court, the state could have developed the record to present evidence in an attempt to prove that appellant meets the definition of "dangerous." Because appellant stipulated to being mentally ill and dangerous, there was no need to develop those facts in the record. Appellant cannot now suggest that the lack of evidence in the record should enable him to avoid the consequences of his stipulation.

Appellant urges us to apply the standard used in criminal pleas rather than the civil standard in evaluating whether his stipulation is valid. *See State v. Goulette,* 258 N.W.2d 758, 761 (Minn.1977) (adopting the United States Supreme Court's holding in *Alford* in the context of a criminal plea and placing particular emphasis on the need to ensure a strong factual basis is present making conviction probable before deeming such a plea as having been voluntarily and intelligently made). Although we find no authority dealing with this issue in the context of a mentally-ill-and-dangerous commitment, we see no reason to distinguish mentally-ill-and-dangerous commitments from other civil-commitment proceedings. *See In re Linehan,* 557 N.W.2d 167, 169 (Minn.1996) (concluding that sexually-dangerous-person act is facially civil), *vacated on other grounds,* 522 U.S. 1011, 118 S.Ct. 596, 139 L.Ed.2d 486 (1997), *aff'd on remand,* 594 N.W.2d 867 (Minn.1999); *Call v. Gomez,* 535 N.W.2d 312, 319–20 (Minn.1995) (holding that commitment under the sexually-psychopathic-personality law is remedial because it is for treatment purposes). Because civil-commitment proceedings are not criminal in nature, *see Specht,* 386 U.S. at 610 n. 3, 87 S.Ct. at 1212 n. 3, we decline to apply the *Alford* requirements to appellant's stipulation.

### DECISION

Because appellant made a voluntary and intelligent stipulation in a civil matter, the district court properly denied appellant's motion to rescind the order for commitment under Minn.Stat. § 253B.18 (2006).

**Affirmed.**