# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A25-0808

In the Matter of the Civil Commitment of: Edward Everett Urbanek.

**Filed December 15, 2025**
**Affirmed, motion denied**
**Harris, Judge**

Otter Tail County District Court
File No. 56-P7-04-001142

Edward Urbanek, Moose Lake, Minnesota (pro se appellant)

Keith Ellison Attorney General, Angela Helseth Kiese, Assistant Attorney General, St. Paul, Minnesota; and

Michelle Eldien, Otter Tail County Attorney, Fergus Falls, Minnesota (for respondent Otter Tail County Department of Human Services)

Considered and decided by Harris, Presiding Judge; Connolly, Judge; and Schmidt, Judge.

## SYLLABUS

I.      The subject of an indeterminate civil commitment petition does not have a constitutional right to self-representation in initial civil-commitment proceedings under Minnesota Statute Chapter 253D.

II.      The statutory right to effective assistance of counsel in civil-commitment proceedings is not subject to a structural-error analysis.

**OPINION**

**HARRIS**, Judge

Previously, the district court indeterminately civilly committed appellant Edward Everett Urbanek as a sexually dangerous person and a sexual psychopathic personality based on a petition filed by respondent Otter Tail County Department of Human Services. In 2025, the district court denied various motions Urbanek filed seeking relief from his civil commitment. Urbanek now challenges the district court's denial of his motion under Minn. R. Civ. P. 60.02(e) arguing: (1) he had a right to represent himself in the initial civil-commitment proceedings and the district court violated that right by appointing counsel for him, constituting a structural error in his 2005 commitment proceeding, and (2) the Minnesota Supreme Court's recent opinion in *In re Civ. Commitment of Benson*, 12 N.W.3d 711, 720 (Minn. 2024) changed the relevant decisional law, entitling him to a new initial commitment hearing. In civil commitment matters, there is a statutory right to counsel, but there is no constitutional right to self-representation. And even if we assume the district court erred by not honoring any right Urbanek may have had to represent himself, the structural-error analysis does not apply to a district court's failure to honor a party's waiver of the statutory right to counsel in a civil commitment proceeding. Therefore, we affirm the district court.

**FACTS**

In June 2004, Otter Tail County petitioned to civilly commit Urbanek to the Minnesota Sex Offender Program. The district court appointed an attorney to represent Urbanek during his commitment proceedings. Urbanek did not request to discharge his

court-appointed attorney. Nor did he otherwise indicate that he wished to represent himself.

In June 2005, after an initial commitment hearing and a review hearing, the district court indeterminately committed Urbanek as a sexually dangerous person (SDP) and a sexual psychopathic personality (SPP) under what is now Minnesota Statutes section 253D.02, subdivisions 15 and 16 (2024).[1] Urbanek appealed his indeterminate commitment, and this court affirmed. *See In re Urbanek*, A05-1633, 2006 WL 44358 (Minn. App. Jan. 10, 2006), *rev. denied* (Minn. March 28, 2006). He has since pursued various unsuccessful challenges to his commitment, including but not limited to multiple prior motions for relief from his commitment under Minn. R. Civ. P. 60.02. Urbanek did not raise denial of his right to self-representation at the time of his initial commitment hearings, on appeal, or during any of his prior rule 60.02 motions, discharge proceedings, or related appeals.

In January 2025, Urbanek filed a motion in district court seeking relief under Minn. R. Civ. P. 60.02(e), (f). He asserted that, in *Benson*, 12 N.W.3d at 720, the Minnesota

---

[1] When Urbanek was committed in 2005, all civil-commitment proceedings in Minnesota were governed by the Minnesota Commitment and Treatment Act (MCTA). *See* Minn. Stat. §§ 253B.01-.24 (2004). In 2013, the legislature amended the MCTA by removing the provisions governing sexually dangerous person (SDP) and sexual psychopathic personality (SPP) commitments from chapter 253B and recodifying them in a new chapter, Minnesota Statutes Chapter 253D, titled the "Minnesota Commitment and Treatment Act: Sexually Dangerous Persons and Sexual Psychopathic Personalities." *See* 2013 Minn. Laws ch. 49, §§ 1-22, at 210-31. We cite the current version of the statute because, although renumbered, its substantive provisions relevant to this appeal remain materially unchanged from those in effect at the time of Urbanek's original commitment. *Compare* Minn. Stat. § 253B.02, subds. 18b, 18c (2004), with Minn. Stat. § 253D.02, subds. 15, 16 (2024).

Supreme Court recently held that a civilly committed person with the statutory right to counsel may move to waive their right to counsel. Based on *Benson*, Urbanek concluded that the appointment of counsel for him during his initial commitment proceeding was a "structural error" in that proceeding. Urbanek then claimed that this "structural error" warranted "automatic reversal" of his 2005 commitment because he was prevented from waiving his right to counsel during his initial commitment proceedings, thus denying him the right to represent himself, which he asserts was recognized in *Benson*. Urbanek also argued that *Benson* established a constitutional right of self-representation, and that his constitutional right was violated when the district court appointed counsel during his initial commitment proceedings.

The district court denied Urbanek's motions, reasoning that, although a right to self-representation was a "structural right," Urbanek's rule 60.02(e) motion failed on the merits because *Benson* did not apply retroactively to his 2005 commitment. The district court also concluded that Urbanek substantially brought the same claims under rule 60.02(e) as he did under rule 60.02(f) without distinguishing how his claims under rule 60.02(f) were different from his claim under rule 60.02(e). Thus, the district court also denied relief under rule 60.02(f).

Urbanek appeals.

## ISSUES

I.  Did *Benson* recognize a constitutional right to self-representation in civil-commitment proceedings?

4

II.     Did the district court err by failing to recognize Urbanek had a constitutional right to self-representation in commitment proceedings under the Sixth and Fourteen amendments and that a violation of the right to self-representation was a structural-error?

III.    Did the district court abuse its discretion by denying Urbanek's rule 60.02 motion.

**ANALYSIS**

A party may obtain relief from a judgment if a district court determines that "it is no longer equitable that the judgment should have prospective application." Minn. R. Civ. P. 60.02(e). Rule 60.02 is available in commitment matters, and "[t]his court reviews a district court's denial of a rule 60.02 motion for an abuse of discretion." *In re Civ. Commitment of Johnson*, 931 N.W.2d 649, 655 (Minn. App. 2019), *rev. denied* (Minn. Sept. 17, 2019). When deciding a rule 60.02(e) motion, the district court must "determine whether changed circumstances exist and, if so, whether they render it inequitable for the judgment to have prospective application," which "must be determined on a case-by-case basis." *City of Barnum v. Sabri*, 657 N.W.2d 201, 207 (Minn. App. 2003). Changed circumstances rendering it inequitable for a ruling to have prospective application may exist if there has been a change in "the relevant decisional law." *In re Civ. Commitment of Moen*, 837 N.W.2d 40, 48-49 (Minn. App. 2013) (quotation omitted), *rev. denied* (Minn. Oct. 15, 2013).

Urbanek challenges the denial of his rule 60.02 motion arguing that, under *Benson*, he had a constitutional right to represent himself in his initial commitment proceedings. He contends that, in his initial commitment proceeding, the district court violated (what he asserts was) his constitutional right to represent himself when it appointed counsel for him,

5

that this violation of his (alleged) constitutional right constitutes a "structural error," and hence that the district court abused its discretion by denying his motion under rule 60.02 for relief from that "structural error." He finally maintains that *Benson* changed the relevant decisional law regarding waiver of counsel in commitment proceedings and should apply retroactively to his case.[2] We address each argument in turn.

## I. *Benson* did not establish a constitutional right to self-representation in civil-commitment proceedings.

Urbanek first argues that *Benson* established a constitutional right to self-representation, and his constitutional right was violated when the district court appointed counsel during his initial commitment proceedings. Urbanek's reliance on *Benson* is misguided for two reasons. First, *Benson* neither establishes, nor even addresses, whether there is a constitutional right to self-representation in commitment proceedings. Second, *Benson* does not address the counsel-related rights of persons who are the subject of commitment petitions—as opposed to the subject of CAP proceedings.

---

[2] For purposes of this opinion, we distinguish commitment proceedings—*i.e.*, proceedings in which a district court addresses *whether* to commit a person—from proceedings in which a commitment appeal panel (CAP) addresses whether to grant an *already-committed person* a reduction in custody. It is undisputed that *Benson* addresses CAP proceedings. As set out in this opinion, however, we conclude that *Benson* does not address commitment proceedings. Thus, we need not address whether *Benson* applies retroactively to commitment proceedings that are already otherwise complete. Also, in this court, respondent Otter Tail County Department of Human Services filed two citations of supplemental authority. Urbanek moved to strike the first of these citations, as well as any arguments relying thereon. In deciding this appeal, we relied on neither of the county's citations of supplemental authority. Nor did we rely on any argument based on those citations of supplemental authority. We therefore deny Urbanek's motion to strike as moot. *See Drewitz v. Motorwerks, Inc.*, 728 N.W.2d 231, 233 n.2 (Minn. 2007) (denying motion to strike as moot because the supreme court did not rely on the contested documents).

Generally, a person already committed as SDP or SPP may petition the special review board (SRB) for a reduction in custody, and the SRB then recommends a resolution of that petition. Minn. Stat. § 253D.27 (2024) A civilly committed person may then petition the CAP for a rehearing and reconsideration of the SRB's recommended resolution of the petition. *See* Minn. Stat. § 253D.28 (2024). In *Benson*, Benson had been civilly committed to the Minnesota Sex Offender Program in 1993 as what is now known as SPP. *See* 12 N.W.3d at 713. In 2020, he petitioned the SRB for a reduction in custody, the SRB recommended denying that petition, and Benson appealed that recommendation to the CAP. *Id*. at 714. The CAP appointed Benson counsel for the CAP hearing. *Id*. Benson sought permission to ask questions at the hearing and noted that he "prefers to proceed pro se if at all possible." *Id*. The CAP denied Benson's request to proceed self-represented and dismissed his petition for a reduction in custody. *Id.* Benson appealed, arguing that the CAP violated his "statutory and constitutional rights to self-representation." *Id.* This court affirmed the CAP's decision, concluding that (1) based on our prior decisions—*In re Irwin*, 529 N.W.2d 366, 371 (Minn. App. 1995), *rev. denied* (Minn. May 16, 1995), and *In re Civ. Commitment of Emberland*, No. A11-1561, 2012 WL 612320, at *6-7 (Minn. App. Feb. 27, 2012) (following *Irwin*)—Benson had no statutory right to proceed without counsel; and (2) Benson did not preserve his constitutional argument. *Id.* at 714-15; *see In re Civ. Commitment of Benson*, A22-1840, 2023 WL 3807476 (Minn. App. June 5, 2023), *rev. granted* (Sep. 27, 2023). The supreme court granted Benson's petition for review of our decision. *Benson*, 12 N.W.3d at 715. The question before the supreme court was whether Minnesota Statutes section 253D.20 (2024), which unambiguously guarantees

7

already civilly committed individuals the right to counsel, also prohibits an already civilly committed individual from waiving their right to counsel. *Id.*

The supreme court reversed this court, reasoning that section 253D.20 unambiguously guarantees the right to counsel for people subject to civil-commitment proceedings but is ambiguous as to whether the right is waivable. *Id.* at 715-16. The supreme court ultimately held that section 253D.20 allowed a committed person to move the CAP to proceed without counsel. Thus, *Benson* ruled that while section 253D.20 provides "[a] committed person" with a statutory right to counsel, that statute also allows a civilly committed person to *move* the CAP to waive that right to counsel. *Id.* (emphasis added). In doing so, the supreme court emphasized that the right to self-representation was "neither absolute nor unfettered." *Id.* at 720. Rather, "a civilly committed person must be deemed competent to enter a knowing and intelligent waiver before being allowed to waive counsel." *Id.* The supreme court noted that its holding that section 253D.20 allowed a civilly committed person to move to waive counsel obviated any need for it to address whether Benson preserved his arguments that he had a constitutional right to self-representation. Relatedly, ruling that section 253D.20 allowed a civilly committed person to move to waive counsel also absolved the supreme court of deciding the merits of any constitutional argument on the point that actually was preserved. *See id.* at 717, 721 n.13. In fact, the supreme court expressly declined to address any constitutional questions by applying the constitutional-avoidance canon to interpret section 253D.20. *Id.* at 717 ("That canon directs us to avoid an interpretation requiring us to confront and revolve a constitutional issue."). Alternatively stated: *Benson* is a *statutory* decision based on

8

section 253D.20, which addresses the counsel-related rights of "[a] civilly committed person"—i.e., the rights of a person who is *already* committed—to seek to waive counsel in CAP proceedings. Thus, *Benson* addressed neither whether *a civilly committed person* (i.e., a person who is *already* committed) has a *constitutional* right to self-representation in CAP proceedings, nor the counsel-related rights of persons who are not (yet) committed, whose counsel-related rights are addressed by a different statute. *See* Minn. Stat. § 253B.07, subd. 2c (2024) (addressing appointment of counsel for persons who are the subject of a commitment petition).

Because *Benson* went out of its way to repeatedly say that it was *not* addressing constitutional arguments, and because *Benson* did not address the counsel-related rights of persons who have not yet been committed, it necessarily follows, contrary to Urbanek's assertion, that *Benson* did *not* establish a constitutional right to self-representation in commitment—as opposed to CAP—proceedings when it considered section 253D.20. *Id.* at 717.

**II.** **The district court did not err in denying Urbanek's rule 60.02 motion because Urbanek had no constitutional right to self-representation during his initial commitment proceedings. Moreover, even assuming error, the structural-error doctrine does not apply to a statutory right to self-representation in a civil-commitment proceeding.**

Urbanek next argues that, because he was deprived of (what he asserts was) his constitutional right to self-representation during his initial commitment proceedings, the district court committed "structural error," requiring his initial commitment to be vacated. We disagree.

9

**A.**    **Neither the Fourteenth Amendment nor the Sixth Amendment provide a constitutional right to self-representation in civil-commitment proceedings.**

Urbanek seems to assert a constitutional right to self-representation in commitment proceedings under the Fourteenth Amendment, the Sixth Amendment, or both.

Previously, however, this court rejected the idea of a constitutional due-process right to counsel in civil-commitment matters. In *Beaulieu v. Dept. of Human Services*, we stated that "[t]he Due Process Clause of the Fourteenth Amendment to the United States Constitution does not confer a right to counsel on a person who is the subject of a civil-commitment proceeding." 798 N.W.2d 542, 543 (Minn. App. 2011). We noted that neither the United States Supreme Court nor the Minnesota Supreme Court have held that the Due Process Clause of the Fourteenth Amendment confers a constitutional right to counsel in civil-commitment proceedings, and we concluded that the appellant's right to counsel in his civil-commitment proceedings was solely a statutory one. *Id.* Following the precedent established in *Beaulieu*, we reject Urbanek's argument that we should recognize a constitutional right to counsel in civil-commitment proceedings under the Due Process Clause of the Fourteenth Amendment.[3]

Regarding the Sixth Amendment, we note that the U.S. Supreme Court has indicted that its application is limited to criminal proceedings: "The Sixth Amendment identifies

---

[3] Although Urbanek cited the Minnesota Constitution as a possible source of a constitutional right to self-representation, he did not advance any argument why the right to counsel in a civil commitment proceeding under the Minnesota Constitution should be different from that under the United States Constitution. Accordingly—and given our rejection of Urbanek's asserted rights under the United States Constitution—we express no opinion as to whether such a right is cognizable under the Minnesota Constitution.

the basic rights that the accused shall enjoy in 'all criminal prosecutions.' They are presented strictly as rights that are available in preparation for trial and at the trial itself." *Martinez v. Ct. of Appeal of Cal., Fourth App. Dist.*, 528 U.S. 152, 159-60 (2000). Civil-commitment proceedings, however "are not criminal in nature[.]" *In re Civ. Commitment of Rannow*, 749 N.W.2d 393, 399 (Minn. App. 2008). Thus, we cannot say the district court erred in refusing to rule that there is a constitutional right to self-representation in CAP commitment proceeding under the Sixth Amendment.[4]

> **B.      Even if Urbanek had a right to self-representation, the structural-error analysis does not apply to a district court's denial of a motion to waive a statutory right to counsel in a civil-commitment proceeding.**

Urbanek contends that a violation of his claimed right to self-representation is a "structural error," requiring reversal. Here, the district court concluded that the right to self-representation in a commitment proceeding is structural. *State v. Bey*, 975 N.W.2d 511, 520 (Minn. 2020). The district court reasoned that the wrongful restriction on a person's ability to represent himself is structural error because it implicates the value of the person's autonomy in the proceeding, entirely separate from the outcome of the proceeding. We disagree. Even if Urbanek had a right to self-representation in a civil commitment proceeding, the structural-error analysis does not apply to any district court's error in not honoring a party's statutory right to seek to waive counsel in a civil-commitment proceeding.

---

[4] We previously reached a similar result, in a nonprecedential opinion. *See In re Emberland*, 2012 WL 612320, at *6; *see also* Minn. R. Civ. App. P. 136.01, subd. 1(c) (stating nonprecedential cases may be cited as persuasive authority).

11

Structural error is a "limited class of error" that is made up of "defects in the constitution of the trial mechanism such that the entire course of the trial is affected." *Id.* Such errors usually result in an automatic reversal because "the effects of the error are simply too hard to measure, harm is irrelevant to the basis underlying the right, or the error always results in fundamental unfairness." *Id.* (quotations omitted). Structural errors are also "very limited" in scope. *Id.* Minnesota courts have primarily applied the structural-error doctrine to criminal trials involving a defendant's constitutional rights. *See State v. Dorsey*, 701 N.W.2d 238, 253 (Minn. 2005) (impartial judge and finder of fact); *Brown v. State*, 682 N.W.2d 162, 166-68 (Minn. 2004) (judge communicating with jury outside defendant's presence); *State v. Reiners*, 664 N.W.2d 826, 835 (Minn. 2003) (denial of the defendant's peremptory challenge); *State v. McRae*, 494 N.W.2d 252, 260 (Minn. 1992) (improper closure of the courtroom violating right to public trial); *State v. Richards*, 456 N.W.2d 260, 261 (Minn. 1990) (denial of defendant's request for self-representation during a criminal trial); *State v. Rosillo*, 281 N.W.2d 877, 879 (Minn. 1979) (denial of right to testify). While "[n]ot every judicial error automatically requires reversal" and "most constitutional errors can be harmless[,]" *State v. Shoen*, 598 N.W.2d 370, 375 (Minn.1999) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 306 (1991)), the structural error doctrine applies to the constitutional right of self-representation, *Bey*, 975 N.W.2d at 521 (citing *Weaver v. Massachusetts*, 582 U.S. 286, 295 (2017)).

Our supreme court has never addressed the issue of whether the structural-error doctrine applies to the statutory right to self-representation in civil-commitment proceedings. Urbanek cites, and we located, no cases that directly address the issue of the

12

application of the structural-error doctrine in the context of civil commitments. The state urges us to follow the reasoning in the analogous cases, *In re F.F.N.M.* and *In re S.A.K.*, that address the application of the structural-error doctrine in the context of a party's statutory right to counsel in the termination of parental rights (TPR) context. *See In re F.F.N.M.*, 999 N.W.2d 525 (Minn. App. 2023); *see also In re S.A.K.*, Nos. A10-2247, A10-2248, 2011 WL 3654450 (Minn. App. Aug. 22, 2011). We are persuaded that *F.F.N.M.* and *S.A.K.* are sufficiently analogous for purposes of this opinion because in those cases, we considered the structural-error doctrine in the context of a party's statutory right to counsel.

In *F.F.N.M.*, we held that the structural-error doctrine did not apply to that appellant's statutory right to counsel in a TPR proceeding. 999 N.W.2d at 544. In *F.F.N.M.*, appellant asked to discharge her attorney and represent herself in her TPR trial. *Id.* at 532. During the trial, appellant was removed from the courtroom due to disruptive behavior. *Id.* The district court proceeded with the trial by default and terminated appellant's parental rights. *Id.* at 534. On appeal, appellant argued that the district court's warnings against discharging counsel were insufficient because the case had reached a "critical phase." *Id.* at 536. Appellant also argued that, because the district court proceeded by default, she was effectively barred from exercising her trial rights and therefore was denied due process. *Id.* at 537. In affirming the district court's decision, we concluded that the critical-stage analysis is used only in criminal proceedings involving a defendant's constitutional right to counsel. *Id.* at 536. We noted that the procedures governing the exercise of a statutory right in a termination case and a constitutional right in a criminal

case are not equivalent. *Id.* (citation omitted). We also concluded that the structural-error analysis did not apply to appellant's claims because she failed to show that the district court used an improper procedure or otherwise violated her right to due process. *Id.* at 544.

Like in *F.F.N.M.*, in which we noted that the procedures governing the exercise of a statutory right in a civil TPR case and a constitutional right in a criminal case are not necessarily equivalent, the procedures here governing the exercise of a statutory right in a civil-commitment proceeding and a constitutional right in a criminal case are not equivalent. Similarly, here, Urbanek did not demonstrate that the district court used an improper procedure or otherwise violated his due-process rights during the initial commitment proceedings. Consequently, even if we assume both that Urbanek had a right to self-representation in his commitment matter, and that his right to self-representation was violated, the structural-error analysis is inapplicable to that (assumed) error and is not a basis for relief.

In *S.A.K.*, we concluded that structural error did not apply to appellant's statutory right to effective assistance of counsel in a TPR proceeding. 2011 WL 3654450, at *11. There, appellant argued that she was deprived of effective assistance of counsel during "critical stages of the TPR proceeding, which constitutes a structural error that warrants automatic reversal." *Id.* We rejected S.A.K.'s challenge, noting that the denial of counsel at a critical stage of a *criminal* proceeding would constitute a structural error requiring reversal because it affects a defendant's *constitutional* rights. *Id.* Similarly, Urbanek's right to self-representation in a civil-commitment proceeding is a statutory right, not a

constitutional right, and therefore is insufficient to support a structural-error analysis. *See* Minn. Stat. § 253D.20 (2022).

In sum, because there is no constitutional right to self-representation in civil-commitment cases, and because we have declined to apply the structural-error doctrine to cases involving a statutory right to counsel, we reject the idea that the structural-error analysis applies to an alleged denial of a right to self-representation in a commitment matter.

**III.    The district court did not abuse its discretion in denying Urbanek's motion because Urbanek did not demonstrate a change in the law that would warrant relief under rule 60.02.**

"This court reviews a district court's denial of a rule 60.02 motion for an abuse of discretion." *Johnson*, 931 N.W.2d at 655. "The burden of proof in a proceeding under Rule 60.02 is on the party seeking relief." *Sabri*, 657 N.W.2d at 205. When deciding a rule 60.02(e) motion, the district court must "determine whether changed circumstances exist and, if so, whether they render it inequitable for the judgment to have prospective application," which "must be determined on a case-by-case basis." *Id.* at 207.

Even if changed circumstances were present based on *Benson*, we conclude that the district court did not abuse its discretion in determining that Urbanek failed to meet his burden to prevail on his rule 60.02 motion. In *Benson*, Benson requested to "proceed pro se if at all possible," which was subsequently denied by the CAP. 12 N.W.3d at 714. Here, unlike *Benson*, Urbanek did not object to the order appointing counsel. Nor did he otherwise seek to waive counsel and represent himself in his civil-commitment proceeding. Urbanek asserts that he was "never provided a waiver hearing for self-representation" and

15

therefore was not "afforded the opportunity to object to the appointment of counsel." This argument is unpersuasive. Urbanek provided no evidence to support his assertion that he wished to represent himself at his initial commitment proceeding, or that he was prevented from making such request. Moreover, while *Benson* recognizes the statutory right of a civilly committed person—*i.e.*, the right of a person *already* committed—to waive counsel, Urbanek was not committed at the time of his commitment proceedings. Furthermore, *Benson* does not require a civilly committed person to be affirmatively informed of the ability to waive this right. *Id.* at 721.

In sum, even if Urbanek's interpretation of the law were correct, on this record, he has not shown the district court abused its discretion by denying his rule 60.02 motion. The record contains no evidence that he ever requested to waive his right to counsel or represent himself at the initial commitment hearing. He essentially argues that the district court abused its discretion by not granting a request that he never made. Thus, even if *Benson* did apply to commitment—as opposed to CAP—matters, Urbanek's argument is not a basis for relief. *See generally Carpenter v. Woodvale, Inc.*, 400 N.W.2d 727, 729 (Minn. 1987) (stating that "[w]hile an appellant acting pro se is usually accorded some leeway in attempting to comply with court rules, he is still not relieved of the burden of, at least, adequately communicating to the court what it is he wants accomplished and by whom").

## DECISION

Because *Benson* did not establish a constitutional right to self-representation in neither a civil commitment proceeding nor a CAP proceeding. And *Benson* did not address

16

the counsel-related rights of a person in commitment proceedings (as opposed to CAP proceedings). We conclude that there is no constitutional right to self-representation in civil-commitment proceedings. Even if Urbanek had a statutory right to self-representation in his commitment proceeding, the structural-error doctrine would not apply to a district court not honoring a parties attempted waiver of their statutory right to counsel in a commitment proceeding. Thus, Urbanek has not shown that the district court abused its discretion in denying his request for relief under rule 60.02(e), and (f). Accordingly, we affirm the district court's order.

**Affirmed; motion denied.**